

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
08/13/2008

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **DEBRA J. HIGHT** | § | Case No. 07-36683 |
| | § | |
| Debtor | § | Chapter 13 |
| | § | |

**MEMORANDUM OPINION ON (1) DEBTOR'S OBJECTION TO CLAIM OF WELLS**
**FARGO BANK, N.A.; AND (2) DEBTOR'S OBJECTION TO APPLICATION FOR**
**APPROVAL OF FEES UNDER FIXED FEE AGREEMENT**
**[Docket Nos. 29 & 48]**

### I.    Introduction

On November 13, 1998, Debra J. Hight (Hight) executed a fixed rate note (the Fixed Rate Note) and a deed of trust (the Deed of Trust) with Norwest Mortgage, Inc. (Norwest).  As the result of a name change and a merger, Norwest became part of Wells Fargo Bank, N. A. (Wells Fargo).  As such, Wells Fargo became the owner and holder of the Fixed Rate Note and the Deed of Trust.

By 2007, Hight was delinquent on her payments to Wells Fargo, and, pursuant to the Fixed Rate Note and the Deed of Trust, a foreclosure sale was scheduled to occur on February 6, 2007.  Hight avoided foreclosure by filing a Chapter 13 bankruptcy petition just before the scheduled sale.  That bankruptcy case was dismissed on September 10, 2007.  Hight subsequently filed this Chapter 13 case on October 1, 2007.

Wells Fargo has filed a proof of claim (the Amended Proof of Claim)[1] in the current bankruptcy case.  In the Amended Proof of Claim, Wells Fargo asserts a total claim of

---

[1] The proof of claim that is pertinent to this Memorandum Opinion is Wells Fargo's amended proof of claim.  The filing of Wells Fargo's original proof of claim is briefly discussed below.

$164,473.30, including amounts for delinquent monthly payments, an escrow shortage, property preservation/inspection fees, uncollected late charges, pre-petition attorney's fees, and post-petition attorney's fees.  Wells Fargo also filed a fee application (the Fee Application) seeking approval to recover $600.00 in post-petition attorney's fees.  Hight filed objections to both the Amended Proof of Claim and the Fee Application, asserting, among other things, that Wells Fargo is attempting to collect illegal fees, fees without any basis, and fees that may not be collected as a matter of law.

For the reasons stated herein, the Court overrules Hight's objection to the Amended Proof of Claim in regards to Wells Fargo's claim for principal and delinquent monthly payments, uncollected late charges, property preservation/inspection fees, and a portion of the pre-petition attorney's fees.  The Court sustains Hight's objection to the Amended Proof of Claim in regards to Wells Fargo's claims for the escrow shortage and a portion of the pre-petition attorney's fees. The Court further finds that, when filing the Fee Application, Wells Fargo failed to comply with Federal Rule of Bankruptcy Procedure 2016 and, as such, may not collect its requested post-petition attorney's fees.

The Court makes the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52, as incorporated into Federal Rule of Bankruptcy Procedure 7052, and Bankruptcy Rule 9014.  To the extent that any Finding of Fact is construed to be a Conclusion of Law, it is adopted as such.  To the extent that any Conclusion of Law is construed to be a Finding of Fact, it is adopted as such.  The Court reserves the right to make any additional Findings and Conclusions as may be necessary or as requested by any party.

## II.    Findings of Fact

The facts, as stipulated to or admitted by the parties, or as adduced from testimony of various witnesses, or as established by the introduction of exhibits, are as follows:

1.  On November 13, 1998, Hight signed the Fixed Rate Note that secured a $168,300.00 loan from Norwest for the purchase of real property located at 12710 Widley Circle, Houston, TX 77077 (the Hight Property). [Wells Fargo Ex. 2].[2] The Fixed Rate Note provides that:

    > If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, [Hight] will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of [the] overdue payment of principal and interest. [Hight] will pay this late charge promptly but only once on each late payment.

    *Id.* at § 6(A). Furthermore, pursuant to the Fixed Rate Note, Wells Fargo maintained the right to request immediate payment of the entire principal and all accrued interest if Hight became delinquent on her monthly payments. *Id.* at § 6(C). The Fixed Rate Note further provided: "If the Note Holder [requests immediate payment], the Note Holder will have the right to be paid back by [the debtor] for all of its costs and expenses in enforcing [the] Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorney's fees." *Id.* at § 6(E).

2.  On November 13, 1998, Hight also signed the Deed of Trust creating a security interest in the Hight Property for the benefit of Norwest. [Wells Fargo Ex. 3]. The Deed of Trust secures repayment of the $168,300.00 loan to Hight pursuant to the Fixed Rate Note. *Id.* The Deed of Trust provides, in pertinent part:

---

[2] Reference in this Memorandum Opinion to "Wells Fargo Ex. _____" refers to the exhibits that Wells Fargo admitted during the February 27 and March 5, 7, and 11, 2008 hearings before this Court.

1.  Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment, and the late charges due under the Note.

2.  Funds for Taxes and Insurance.  Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum[3] ("Funds") for:  (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property . . . .  These items are called "Escrow Items."[4]  Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under [federal law] . . . .  Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law. . . .  Lender shall apply the Funds to pay the Escrow Items . . . .

4.  Charges, Liens.  Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument . . . .  Borrower shall pay these obligations in the manner provided in paragraph 2 . . . .

7.  Protection of Lender's Rights in Property.  If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy . . .), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's right in the Property.  Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs.  Although Lender may take action under this paragraph 7, Lender does not have to do so.
Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Interest . . . .

21.  Acceleration, Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . .  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale

---

[3] These payments will hereinafter be referred to as Escrow Payments.
[4] This definition of "Escrow Items" will be utilized for the duration of this Memorandum Opinion.

> and any other remedies permitted by applicable law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

*Id.* (footnotes added).

3.  On April 3, 2000, Norwest changed its name to Wells Fargo Home Mortgage, Inc. [Wells Fargo Ex. 1 (Certificate of Amendment, #A0542642)]; [Tr. Mar. 5, 2008, 68:2–25].

4.  On May 5, 2004, Wells Fargo Home Mortgage, Inc. merged into Wells Fargo.  [Wells Fargo Ex. 1 (Agreement of Merger, #D0737510)]; [Tr. Mar. 5, 2008, 68:2–25].

5.  On November 27, 2006, at the request of Wells Fargo, First American Field Services (American Field) inspected the Hight Property at a cost of $16.25 ($15.00 for the inspection and $1.25 for a photograph taken of the property).   [Tr. Feb. 27, 149:11–22, 151:21–152:7]; [Wells Fargo Ex. 1].  Other inspections were made by American Field on October 24, 2006, December 29, 2006, and January 30, 2007—each at a cost of $15.00.  [Tr. Feb. 27, 150:15–18]; [Wells Fargo Ex. 1].  Wells Fargo was invoiced for these services and paid the balance of $61.25.  [Tr. Feb. 27, 2008, 150:15–23]; [Wells Fargo Ex. 1].

6.  On February 3, 2007, Hight filed a voluntary Chapter 13 petition (Case Number 07-30755) in the Southern District of Texas, Houston Division (the First Bankruptcy). [Tr. Mar. 5, 2008, 56:10–14]; [Docket No. 5 at § 2].

7.  A foreclosure sale of the Hight Property was scheduled to occur on February 6, 2007 (the Foreclosure Sale).  [Wells Fargo Ex. 1 (Invoice #20416)].  The Foreclosure Sale never occurred.  [Tr. Mar. 5, 2008, 95:4–6].  The Foreclosure Sale was stayed by the

filing of the First Bankruptcy on February 3, 2007—a few days before the scheduled sale.

8.  As of September 10, 2007, Hight had an Escrow Balance (the sum of Hight's Escrow Payments less any sums paid towards Escrow Items) of negative $2,352.33 with Wells Fargo. [Tr. Feb. 27, 2008, 178: 6–9].

9.  On September 18, 2006, pursuant to the Fixed Rate Note, Wells Fargo imposed a $52.50 late charge on Hight for allowing her mortgage to become delinquent. [Tr. Feb. 27, 187:21–24, 190:10–17]; *see also* [Wells Fargo Ex. 2 at § 6(A)]. Subsequent late charges for $52.50 were imposed on October 16, 2006, November 16, 2006, December 18, 2006, and January 16, 2007. [Tr. Feb. 27, 2008, 187:21–24]. Hight had not paid the $262.50 late fee balance as of October 1, 2007—the day she filed her current bankruptcy petition. [Tr. Feb. 27, 191:8–15].

10. On February 12, 2007, Barrett Burke Wilson Castle Daffin & Frappier, L.L.P. (Barrett Burke)—outside counsel for Wells Fargo—invoiced $1,016.50 to Wells Fargo. [Wells Fargo Ex. 1 (Invoice #20416)]. The invoice included the following charges: foreclosure sale scheduled for February 6, 2007 ($675.00), posting notice of sale ($25.00), filing notice of sale ($2.00), statutory service of notice ($5.58), pre-foreclosure title search ($178.61), recording of appointment ($16.00), title search update ($89.31), and document retrieval ($25.00). *Id.*

11. On February 22, 2007, Barrett Burke invoiced $150.00 to Wells Fargo for the preparation and filing of a proof of claim in the First Bankruptcy. [Wells Fargo Ex. 1 (Invoice #CX214)].

12. On September 7, 2007, Barrett Burke invoiced $500.00 to Wells Fargo for "Motion for Relief from Stay and Order" ($350.00) and "Statutory Filing Fee" ($150.00). [Wells Fargo Ex. 1 (Invoice #12001432)]. The "Statutory Filing Fee" was indicated to be a "[b]ankruptcy cost[] required by the court." *Id.*

13. On September 10, 2007, the First Bankruptcy was dismissed because: (1) Hight failed to provide the information necessary for entry of ACH payment as ordered by the Court on June 11, 2007; and (2) Hight was delinquent in her payments to the trustee by $3,600.00—an amount constituting two months of required payments. [Case #07-30755, Docket Nos. 35 & 47]; [Tr. Mar. 5, 2008, 56:10–14].

14. On September 11, 2007, Wells Fargo and Hight entered into an agreed order (the Agreed Order) that provided: "The parties stipulate that unpaid amounts due post-petition total $6,688.95 and that [Wells Fargo] should be awarded attorney's fees and costs in the amount of $500.00 (not to exceed $650.00), for a total post-petition amount owed of $7,188.95 . . . ." [Wells Fargo Ex. 30, p. 3]; [Docket No. 46, Case No. 07-30755, p. 3].[5]

15. On October 1, 2007, Hight filed her second voluntary Chapter 13 bankruptcy petition in the Southern District of Texas, Houston Division. [Docket No. 1]. On the same day, Hight filed a motion to extend the automatic stay pursuant to 11 U.S.C. § 362(c)(3)(B) (the Motion to Extend Stay). [Docket No. 5].

16. On October 17, 2007, Wells Fargo filed a response to the Motion to Extend Stay. [Docket No. 16].

---

[5] The Court notes the apparent oddity that the Agreed Order was dated a day after the dismissal of the First Bankruptcy. The Court believes this aberration is due to a delay between the parties entering into the agreement and the docketing of the Agreed Order. *See* [Case #07-30755, Docket No. 46, p.6] (The signature page of the Agreed Order appears to have been signed by a representative of Wells Fargo, faxed from Barrett Burke to Hight on September 7, 2007, signed by Hight, and then returned later that day.).

17. On November 5, 2007, this Court extended the automatic stay, subject to the following conditions with respect to Wells Fargo:

    a. Hight will remit to the Chapter 13 Trustee post-petition monthly payments due to Wells Fargo pursuant to Hight's Chapter 13 Plan;

    b. Hight will pay to the Chapter 13 Trustee the $4,500.00 that Hight expects to receive from the Trustee in the First Bankruptcy upon receipt; and

    c. Hight will provide proof of insurance for casualty loss on the Hight Property by November 5, 2007.

[Docket No. 18]. Failure of any of these conditions would cause termination of the automatic stay with respect to Wells Fargo without further order of this Court or a hearing thereon. *Id.*

18. On October 29, 2007, Wells Fargo filed a proof of claim in the current bankruptcy case for $164,248.30 (the Original Proof of Claim). [Claims Register, Case No. 07-36683].

19. On October 29, 2007, Barrett Burke invoiced $250.00 to Legal Practice Management[6] for plan review, analysis, preparation, and filing of a proof of claim in the current case. [Wells Fargo Ex. 1 (Invoice #12003389)]. This invoice did not describe how much time was spent on the invoiced services. *Id.* Barrett Burke was paid $250.00 for this service. [Tr. Feb. 27, 2008, 44:1–4].

---

[6] Legal Practice Management is a team within Barrett Burke's bankruptcy department that provides specialized services for Wells Fargo. [Tr. March 7, 2008, 115:10–20]. Due to the software utilized by Barrett Burke for invoicing Wells Fargo, certain invoices indicate that Legal Practice Management is the invoiced client, while, in reality, Wells Fargo is the client being invoiced. *Id.* at 117:4–118:7. As such, for the duration of this Memorandum Opinion, the Court will, in the interest of simplicity, refer to Wells Fargo being invoiced as opposed to Legal Practice Management.

20. On November 7, 2007, Barrett Burke invoiced $350.00 to Wells Fargo for "Responses to Motion to Extend Stay." [Wells Fargo Ex. 1 (Invoice #12003881)]. This invoice did not describe how much time was spent on the invoiced services. *Id.*; [Tr. Mar. 5, 2008, 90:20–91:3]. Barrett Burke was paid $350.00 for this service. [Tr. Feb. 27, 2008, 47:2–5].

21. On January 9, 2008, Hight filed an objection to the Original Proof of Claim (the Objection to Claim). [Docket No. 29]. The Objection to Claim states:

> 4. The Debtor avers that Wells Fargo Home Mortgage has no basis for including these fees and charges in her proof of claim.
>
> 5. The Debtor alleges that Wells Fargo Home Mortgage proof of claim is padded with illegal charges, designed to extract additional and substantial profits from the servicing of the Debtor's mortgage loan and from the property of this bankruptcy estate to the detriment of the Debtor and the unsecured creditors with filed and allowed claims.
>
> 6. Additionally, Wells Fargo Home Mortgage is not entitled to fees for the preparation and filing of a proof of claim pursuant to In re Allen, 215 B.R. 503 (Bankr. N.D. Tex. 1997). The preparation of a claim is a ministerial act and does not need an attorney to prepare the claim.
>
> 7. Also, the pre-petition attorney fees have not been approved by the court pursuant to Rule 2016(a) . . . .[7]

---

[7] The Objection to Claim further stated that "Wells Fargo Home Mortgage failed to attach any supporting written or printed documentation to support its claims for these charges, in violation of [Federal Rule of Bankruptcy Procedure] 3001(c), and the claim is therefore improper." [Docket No. 29]. Rule 3001(c) states:

> When a claim, or an interest in property of the debtor securing the claim, is based on a writing, the original or a duplicate shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim.

Thus, a claim that is predicated on a deed of trust or a note should be accompanied by the document giving rise to the claim. *See In re Long*, 353 B.R. 1, 13–14 (Bankr. D. Mass. 2006) (deeming Rule 3001(c) not satisfied where a claim based on a "promissory note, [a] mortgage, [a] Loan Modification Agreement, and . . . various assignments" was not accompanied by such documents); *In re Shannon*, No. 05-02202, 2006 WL 1234963, at *1 (Bankr. D. Dist. Colo. May 4, 2006). However, failure to comply with Rule 3001(c) merely renders a claim to not constitute "prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f); *In re Tran*, 369 B.R. 312, 315 (Bankr. S.D. Tex. 2007). Thus, while the Objection to Claim properly states that failure to comply with Rule 3001(c) is "improper," the Court notes that such a failure does not automatically render a claim invalid. Rule 3001(c) is only discussed in this Memorandum Opinion in instances where the Rule is potentially not satisfied.

9. Finally, Wells Fargo Home Mortgage failed to attach any supporting documentation indicating that they are the rightful creditor. The Fixed Rate Note and Deed of Trust are not in the name of Wells Fargo Home Mortgage, and there are no documents attached indicating that the Deed of Trust was transferred to Wells Fargo Home Mortgage.

10. The Debtor is therefore objecting to the proof of claim filed by Wells Fargo Home Mortgage.

*Id.* (footnote added).

22. On February 13, 2008, Wells Fargo filed the Fee Application (entitled "Application for Approval of Fees Under Fixed Fee Agreement"). [Docket No. 39, p.1]. The Fee Application sought $600.00 for post-petition legal services that Barrett Burke rendered. *Id.* The $600.00 was composed of $250.00 for claim preservation (described as "Case set-up and review of petition and schedules, review of prior bankruptcy filing and resolution, prepare and file a Notice of Appearance, prepare and file a Proof of Claim, plan review regarding treatment of the mortgage creditor's interest, and supervise the case through confirmation") and $350.00 associated with the Motion to Extend Stay (described as "Review motion, prepare response, prepare for hearing, present case at evidentiary hearing, and prepare Order Conditioning Stay Extension"). *Id.* Furthermore, the Fee Application stated that Wells Fargo, at some point in the future, would seek reimbursement for services associated with Hight's Objection to Claim. *Id.*

23. On February 13, 2008, Wells Fargo filed a Motion for Expedited Consideration of the Fee Application of Wells Fargo. [Docket No. 40].

24. On February 26, 2008, Wells Fargo filed an amended proof of claim (the Amended Proof of Claim) in the amount of $164,473.30. [Wells Fargo Ex. 1, p. 1]. The Amended Proof of Claim included a claim for principal in the amount of

$149,210.63, 12 monthly payments of $1,546.38 that were in arrears, an escrow

shortage of $779.00, uncollected late charges of $262.50, property

preservation/inspection fees of $61.25, pre-petition attorney's fees of $1,666.50, and

post-petition attorney's fees of $250.00. *Id.* at 1–2.

25. On February 26, 2008, Hight filed an Objection to Wells Fargo's Application for

Approval of Fees under Fixed Fee Agreement (the Fee Objection). [Docket No. 48].

The Fee Objection stated:

> 5. Only after Debtor filed an Objection to Claimant's Proof of Claim, did
> Claimant produce documentation regarding the amounts stated in the
> Proof of Claim. The invoice for the Post-Petition Bnk. Atty. Fee of
> $250.00 states the fee was for "Preparation and filing of Proof of Claim".
> However, in Claimant's Application, Claimant states the $250.00 fee is for
> the following:
>
> > "CLAIM PRESERVATION: Case set-up and review of
> > petition and schedules, review of prior bankruptcy filing
> > and resolution, prepare and file a Notice of Appearance,
> > prepare and file a Proof of Claim, plan review regarding
> > treatment of the mortgage creditor's interest, and supervise
> > the case through confirmation - $250.00;"
>
> 6. Additionally, if the $250.00 fee includes "supervise the case through
> confirmation", an additional fee of $350.00 for its Response to the
> Objection to Claim is unwarranted. Further, Debtor asserts that had
> Claimant's counsel attached the documents to the Proof of Claim to
> substantiate its claim, an Objection to Claim may have been avoided.
>
> 7. Further, Claimant's counsel claims is filing its Application for Approval
> of Fees Under Fixed Fee Agreement, but no Fixed Fee Agreement has
> been submitted to Debtor, Debtor's counsel, or to the Court for approval.[8]
>
> 8. If the $250.00 fee is actually for the preparation and filing of the Proof
> of Claim, Debtor asserts that Claimant and its counsel are not entitled to
> fees for the preparation and filing of a proof of claim pursuant to In re
> Allen, 215 B.R. 503 (Bkrtcy, N.D.Tex 1997). The preparation of a claim is
> a ministerial act and does not need an attorney to prepare the claim.

---

[8] The Court notes that this clause is not a model of clarity, and would request that counsel for the present parties attempt to draft documents in a simple and understandable fashion in the future.

Further, upon information and belief, Debtor avers that the Proof of Claim was actually prepared by paralegals and/or non-attorney staff.

9. Debtor further asserts that post-bankruptcy attorney fees should not be included in a Proof of Claim but should be applied for pursuant to Bankruptcy Rule 2016(a).

[Docket No. 48] (footnote added).

## III.   Conclusions of Law

### A.   Jurisdiction and Venue

This Court has jurisdiction over this fee objection and objection to claim pursuant to 28 U.S.C. §§ 1334(a) and 157(a). The Court may enter a final order on these contested matters as they are a core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O).  Venue is proper pursuant to 28 U.S.C. § 1408.

### B.   Debtor's Objection to Claim of Wells Fargo Bank

Bankruptcy Rule 3001 sets forth that "[a] proof of claim executed and filed in accordance with [the Federal Rules of Bankruptcy Procedure] shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f).  However, if a debtor properly objects to the claims, the claimant must establish the validity of its claims by a preponderance of the evidence.  *S. Tex. Wildhorse Desert Invs., Inc. v. Tex. Commerce Bank-Rio Grande Valley*, 314 B.R. 107, 124 (S.D. Tex. 2004) (citing *In re O'Connor,* 153 F.3d 258, 260 (5th Cir. 1998)). To properly object to a claim "the objector must present evidence sufficient 'to refute at least one of the allegations that is essential to the claim's legal sufficiency.'" *In re Starnes*, 231 B.R. 903, 912 (N.D. Tex. 1998) (quoting *In re Allegheny Int'l Inc.,* 954 F.2d 167, 173–74 (3d Cir. 1992)). Such a proper objection might be established through "the production of specific and detailed allegations that place the claim into dispute, . . . the presentation of legal arguments based upon the contents of the claim and its supporting documents, . . . or through pretrial pleadings . . . in

which evidence is presented which brings the validity of the claim into question." *In re Kilgore Meadowbrook Country Club, Inc.*, 315 B.R. 412, 417–18 (Bankr. E.D. Tex. 2004) (internal citations omitted). Should the debtor fail to properly object to the claim, the claimant will prevail and the claim will be valid. *In re Fid. Holding Co., Ltd.*, 837 F.2d 696, 698 (5th Cir. 1988).

### i. The Principal Balance and Monthly Payments in Arrears

In the Amended Proof of Claim, Wells Fargo sets forth a claim for $149,210.63, representing the remaining principal balance under the Fixed Rate Note (the Loan Principal), and a claim for $18,556.56, representing 12 missed monthly payments for $1,546.38 each. [FOF 24]; [Wells Fargo Ex. 1, p. 2]. In the Objection to Claim, Hight asserts that Wells Fargo has no basis for including these claims and that the claims are illegal. [FOF 21]; [Docket No. 29]. The Court disagrees.

Wells Fargo attached both the Fixed Rate Note and the Deed of Trust to the Amended Proof of Claim. These documents set forth Hight's obligation to repay $168,300.00 plus 6.375% annual interest to Wells Fargo. [Wells Fargo Ex. 2]. In the Objection to Claim, Hight made the broad assertion that "Wells Fargo . . . has no basis for including these fees and charges . . . ." [Docket No. 29, p. 1]. Hight has not set forth any further objection regarding Wells Fargo's basis for claiming either the Loan Principal or the delinquent monthly payments. Such a vague complaint is insufficient to properly object to a claim. *See* William L. Norton, Jr. & William L. Norton, III, Norton Bankruptcy Law and Practice § 48:25 (3d ed. 2008) ("A general objection without specific reference to a proper ground may be an insufficient objection and is subject to a motion to dismiss at, or prior to, a hearing.") (citing *Lundell v. Anchor Const. Specialists, Inc.*, 223 F.3d 1035 (9th Cir. 2000); *In re Ross*, 162 B.R. 785 (Bankr. N.D. Ill. 1993)). To object to a

claim, the debtor must refute an allegation that is essential to the claim. *Starnes*, 231 B.R. at 912. Hight has not carried this burden in regards to her assertion that Wells Fargo's claims for the Loan Principal or the delinquent monthly payments are without basis.

Furthermore, Hight's broad assertion that the Amended Proof of Claim is "padded with illegal charges" is equally vague. Hight has not asserted—and this Court does not see—a specific ground of illegality upon which this Court could deny Wells Fargo's claims for the Loan Principal or delinquent monthly payments. Accordingly, Hight has failed to properly object to these specific claims, and as such, Hight's objection to these particular claims is overruled.

### ii. Escrow Shortage

The Deed of Trust provides that a portion of Hight's monthly payments to Wells Fargo, the Escrow Payments, are to go towards the payment of Escrow Items. [Wells Fargo Ex. 3 at § 2]. The Escrow Items include "yearly taxes and assessments which may attain priority over [the Deed of Trust]." *Id.* Should Hight's Escrow Balance be "insufficient to pay the Escrow Items when due, . . . [Hight] shall pay to Lender the amount necessary to make up the deficiency." *Id.* Pursuant to these provisions, Wells Fargo submitted a claim for an "escrow shortage" of $779.00. [Wells Fargo Ex. 1]. The amount of this claim was calculated by adding the expected $4,383.47 expense of the 2007 property taxes on the Hight Property[9] (the Property Taxes) to the then-current escrow deficiency of $2,352.33, and then subtracting the Escrow Payments that were included in the Amended Proof of Claim (12 payments of $496.40 each).[10]

Hight asserts that Wells Fargo's $779.00 claim for an escrow shortage is both illegal and without a basis. [Docket No. 29]. In determining the validity of these objections, the Court

---

[9] As of the time that Hight filed the present bankruptcy petition, the Property Taxes had not yet been paid. [Tr. February 27, 2008, 178: 14–15]. As such, in order to include a claim for reimbursement for the Property Taxes, Wells Fargo estimated the 2007 property taxes to be $4,383.47 (based on the 2006 property taxes). [Tr. March 5, 2008, 69:17–19].

[10] Thus, the $779.00 deficiency was calculated as follows: $(12 \times \$496.40) - (\$4,383.47 + \$2,352.33) = -\$779.00$.

focuses on whether the Deed of Trust and the Fixed Rate Note grant Wells Fargo the right to include this charge in the Amended Proof of Claim.  The Court finds that these documents do not create such a right, and as such, this claim is improper.

Initially, the Court notes that absent Wells Fargo's attempt to seek reimbursement for the Property Taxes ($4,383.47), no escrow shortage exists.  As such, the Court will first evaluate whether the Property Taxes were properly included in the Amended Proof of Claim.  If that charge is not includable, then Wells Fargo's claim for an escrow shortage is improper because the Escrow Payments sought by Wells Fargo in the Amended Proof of Claim would be sufficient to cover the costs associated with all of the Escrow Items.

To determine whether the Property Taxes were properly includable in the Amended Proof of Claim, the Court looks to the document giving rise to Wells Fargo's claim for the Property Taxes.  In pertinent part, the Deed of Trust provides:

> If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy . . .), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's right in the Property.  Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument . . . . Although Lender may take action under this paragraph . . . , Lender does not have to do so . . . .  Any amounts disbursed by Lender under this paragraph . . . shall become additional debt of Borrower secured by this Security Interest.

[Wells Fargo Ex. 3 at § 7].  Accordingly, when Hight became delinquent on her payments and again when Hight filed for bankruptcy, Wells Fargo had the right, but not the obligation, to pay the Property Taxes (a sum secured by a lien that had priority over the Deed of Trust).[11] However, pursuant to the plain language of the Deed of Trust, only after Wells Fargo actually disbursed funds may such funds become additional debt under the Deed of Trust.  Thus, it

---

[11] A tax lien attaches to property at the start of each year to secure payment of taxes.  Tex. Tax Code Ann. § 32.01 (Vernon 2007).  Such a lien has priority over a mortgage lien, regardless of the order of attachment.  Tex. Tax Code Ann. § 32.05(b) (Vernon 2007).

necessarily follows that only after such funds are actually disbursed may Wells Fargo include a claim for those funds in a proof of claim.

Wells Fargo has not set forth any evidence that it actually paid the Property Taxes. In contrast, testimony was adduced indicating that, as of the drafting of the Amended Proof of Claim, the Property Taxes had not been paid. *See* [Tr. Feb. 27, 178: 13–15]; [Tr. Mar. 5, 2008, 98:10–20]. As such, this Court has no evidence upon which to determine that Wells Fargo has actually paid the Property Taxes and created any additional debt. *See* [Wells Fargo Ex. 3, § 7] ("Any amounts *disbursed* by Lender under this paragraph . . . shall become additional debt of Borrower secured by this Security Interest." (emphasis added)). Absent such additional debt, no escrow shortage exists.[12] Therefore, Wells Fargo's $779.00 claim for an escrow shortage in the Amended Proof of Claim is improper, and must be disallowed.

### iii. Uncollected Late Charges

In the Amended Proof of Claim, Wells Fargo sets forth a claim for $262.50 for "uncollected late charges." [Wells Fargo Ex. 1]. These charges were imposed pursuant to the Fixed Rate Note[13] and the Deed of Trust.[14] [Wells Fargo Ex. 2 at § 6(A)]; [Wells Fargo Ex. 3 at § 1]. In the Objection to Claim, Hight asserted that Wells Fargo has no basis for including these charges and that the charges are illegal. The Court disagrees. Hight has not refuted any allegations in the Amended Proof of Claim that are essential to this particular claim's legal sufficiency, and therefore, Hight has failed to properly object to this claim.

---

[12] Without the inclusion of the Property Taxes, the Escrow Account does not have a deficiency: (12 x $496.40) – $2,352.33 = $3,604.47
[13] The Fixed Rate Note provides: "If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, [Borrower shall] pay a late charge to the Note Holder."
[14] The Deed of Trust provides: "Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment, and the late charges due under the Note."

Despite her broad assertions that the "Wells Fargo Home Mortgage proof of claim is padded with illegal charges," Hight failed to assert any specific manner in which Wells Fargo's claim to recover uncollected late charges is illegal. *See* [Docket No. 29]. The Court fails to see any grounds of illegality and, as previously discussed, such broad accusations are insufficient to properly object to a proof of claim. *See* William L. Norton, Jr. & William L. Norton, III, Norton Bankruptcy Law and Practice § 48:25 (3d ed. 2008).

Likewise, Hight has failed to establish that Wells Fargo has no basis for including these charges. Wells Fargo attached both the Fixed Rate Note and the Deed of Trust to the Amended Proof of Claim. These documents—read together—establish Wells Fargo's right to impose, and Hight's obligation to pay, these late charges. *See* [Wells Fargo Ex. 2 at § 6(A)]. As such, Hight's assertion that Wells Fargo has no basis upon which to claim this fee is without merit.[15] Accordingly, the Court finds Wells Fargo's claim for uncollected late charges to be valid.

### iv. Property Preservation/Inspection Fees

In the Amended Proof of Claim, Wells Fargo sets forth a claim for $61.25 for property preservation/inspection fees incurred pursuant to the Fixed Rate Note. [Wells Fargo Ex. 1]. In the Objection to Claim, Hight asserted that Wells Fargo has no basis for including this fee and that this charge is illegal. The Court disagrees.

Hight has not refuted any allegations in the Amended Proof of Claim that are essential to this claim's legal sufficiency, and as such, has failed to properly object to this claim. Initially, the Court notes that Wells Fargo attached a copy of the Deed of Trust to the Amended Proof of Claim. [Wells Fargo Ex. 1]. The Deed of Trust provided that if Hight failed to comply with the

---

[15] The Court notes that Hight attempted to cast doubt upon the validity of these charges during the cross-examination of Cindy Shanabrook (Wells Fargo's representative), but the Court did not find that Hight was able to bring the validity of the claim into question. *See* [Tr. March 5, 32:19–35:4]. Alternatively, if this Court is wrong—and Hight has properly objected to Wells Fargo's claim for "uncollected late charges"—Wells Fargo has established the propriety of these claims by a preponderance of the evidence.

covenants contained therein or entered into "a legal proceeding that may significantly affect [Wells Fargo's] rights in the Property (such as a proceeding in bankruptcy . . .)," then Wells Fargo had the right to take actions to maintain the value of the Hight Property. [Wells Fargo Ex. 3 at § 7]. Furthermore, any amount spent by Wells Fargo under that clause was to be added to Hight's debt. *Id.* Property inspection is a proper means of ensuring that the Hight Property is not unduly depreciating. As such, the Deed of Trust establishes Wells Fargo's right to claim property preservation/inspection fees, and thus, Hight's assertion that this claim is baseless is without merit.

Furthermore, Hight has not set forth a specific legal basis under which this claim is illegal. As discussed above, such a generalized objection is not, by itself, sufficient to properly object to a claim. As such, Hight has not established a proper objection to this claim based on that argument. Accordingly, as Hight has failed to properly object to Wells Fargo's claim for property preservation/inspection fees, this claim is valid.

### v. Pre-Petition Attorney's Fees

Wells Fargo included a claim for $1,666.50 in pre-petition attorney's fees in the Amended Proof of Claim. [Wells Fargo Ex. 1]. Wells Fargo's pre-petition attorney's fees are described in three invoices prepared by Barrett Burke (invoices #CX214, #12001432, and #20416). *Id.*

"Attorneys' fees incurred by a secured lender pre-petition are tested for reasonableness under applicable state law." *In re 900 Corp.*, 327 B.R. 585, 593 (Bankr. N.D. Tex. 2005) (citing *In re Cummins Util., L.P.,* 279 B.R. 195 (Bankr. N.D. Tex. 2002)). Texas law is applicable to the Deed of Trust and the Fixed Rate Note. [Wells Fargo Ex. 3 at § 15 ("This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property

is located.")].  Pursuant to Texas law, "a party may recover its attorneys' fees when it is authorized to do so by statute or when the parties' contract so provides." *900 Corp.*, 327 B.R. at 593 (citing *AU Pharm., Inc. v. Boston,* 986 S.W.2d 331 (Tex. App.—Texarkana 1999, no writ)).

The Deed of Trust provides that Wells Fargo may seek reimbursement for reasonable attorney's fees expended "to protect the value of the Property and Lender's right in the Property." [Wells Fargo Ex. 3 at § 7].  Further, Wells Fargo may recover reasonable attorney's fees expended pursuant to § 21 of the Deed of Trust, which provides that, upon Hight's breach of the Deed of Trust, Wells Fargo may accelerate the debt, invoke the power of sale, or take any other remedy permitted by applicable law. *Id.*  Lastly, the Fixed Rate Note provides that, after acceleration of the debt, Wells Fargo has the right to "be paid back by [Hight] for all of its costs and expenses in enforcing [the Fixed Rate Note] to the extent not prohibited by applicable law . . . [including] reasonable attorney's fees."  [Wells Fargo Ex. 2 at § 6(E)].  As such, Wells Fargo has the right to recover its pre-petition attorney's fees and associated costs to the extent that they are reasonable.

### 1.  Invoice #CX214 ($150.00)

Invoice #CX214 represents $150.00 in attorney's fees and costs incurred by Wells Fargo in the First Bankruptcy, and therefore, is a pre-petition claim in the current case.[16]  [Wells Fargo Ex. 1]; [Tr. Mar. 5, 2008, 26:21–27:1].  Invoice #CX214 represents charges incurred for the preparation and filing of Wells Fargo's proof of claim in the First Bankruptcy.[17]  [Wells Fargo Ex. 1 (Invoice #CX214)]; [Tr. Mar. 5, 2008, 93:16–94:5].

---

[16] The $150.00 in attorney's fees and costs were invoiced to and paid by Wells Fargo.  [Tr. March 5, 2008, 27:12–28:7]; [Wells Fargo Ex. 40].

[17] The Court notes that there is a split of authority regarding whether the preparation and filing of a proof of claim may properly give rise to a claim for attorney's fees.  As Bankruptcy Judge Letitia Clark recently noted en route to approving attorney's fees for the preparation of a proof of claim:

In the Objection to Claim, Hight asserts that Wells Fargo has no basis for including these charges and that the charges are illegal. The Court disagrees. While Wells Fargo maintains the ultimate burden of proof on this issue,[18] Hight has not refuted any allegations in the Amended Proof of Claim that are essential to this claim's legal sufficiency; therefore, Hight has failed to carry its burden to properly object to this claim.

Initially, despite her broad assertions that the "Wells Fargo Home Mortgage proof of claim is padded with illegal charges," Hight did not assert a specific manner of illegality associated with Wells Fargo's claim to recover fees and costs connected to Wells Fargo's proof of claim in the First Bankruptcy. *See* [Docket No. 29]. The Court does not perceive any grounds of illegality and, as discussed above, such broad accusations are insufficient to prevail in an objection to a proof of claim. *See* William L. Norton, Jr. & William L. Norton, III, Norton Bankruptcy Law and Practice § 48:25 (3d ed. 2008).

Furthermore, Hight has failed to establish that Wells Fargo has no basis for including these charges. Wells Fargo attached both the Fixed Rate Note and the Deed of Trust to the Amended Proof of Claim. These documents establish Wells Fargo's right to seek reimbursement for these attorney's fees and costs. *See* [Wells Fargo Ex. 2 at § 6(E)]. Thus, Hight's assertion that Wells Fargo does not have a basis upon which to claim these fees is without merit, and

---

The courts holding that [attorney's fees associated with the preparation of a proof of claim] are allowable, *In re Powe*, 278 B.R. 539 (Bankr. S.D. Ala. 2002); and *In re LeMarquis Assoc.*, 65 B.R. 719 (Bankr. E.D. Ca. 1986). *rev'd on other grounds* 81 B.R. 576 (9th Cir. BAP 1987) held that preparing a proof of claim requires the examination of relevant law. The courts holding that fees are not allowable, *In re Staggie*, 255 B.R. 48 (Bankr. D. Idaho 2000); *In re Banks*, 31 B.R. 173 (Bankr. N.D. Ala. 1982); and *In re Madison*, 337 B.R. 99 (Bankr. N.D. Miss. 2006) held that the filing of a proof of claim is a ministerial act for which attorney services are not necessary.

*In re Moye*, 385 B.R. 885, 891 (Bankr. S.D. Tex. 2008). This Court is inclined to agree with Judge Clark that attorney's fees may properly be claimed for the preparation and filing of a proof of claim. However, this Court does not hold that attorney's fees for preparation and filing of a proof of claim should be approved in *every* instance.

[18] *See In re El Paso Ref., L.P.*, 257 B.R. 809, 833 (Bankr. W.D. Tex. 2000) ("The burden of proving what constitutes 'reasonable compensation' is upon the party requesting the compensation.").

therefore, the Court finds Wells Fargo's claim for reasonable attorney's fees arising from Wells Fargo's proof of claim in the First Bankruptcy to be valid.

### 2.   Invoice #12001432 ($500.00)

Invoice #12001432 represents $500.00 in attorney's fees and costs incurred by Wells Fargo in the First Bankruptcy, and therefore, is a pre-petition claim in the current case.[19]  [Wells Fargo Ex. 1]; [Tr. Mar. 5, 2008, 26:21–27:1].  Invoice #12001432 includes charges in connection with Wells Fargo's motion for relief from the stay ($350.00) and the associated filing fee ($150.00).  *Id.* (Invoice #12001432).

Immediately after the dismissal of the First Bankruptcy, Wells Fargo and Hight entered into the Agreed Order, which provided:  "The parties stipulate that . . . [Wells Fargo] should be awarded attorneys fees and costs in the amount of $500.00 (not to exceed $650.00) . . . ."  [Wells Fargo Ex. 30, p. 3]; [Docket No. 46, Case No. 07-30755, p. 3].  During the hearing, the parties contested the meaning of the "not to exceed $650.00" parenthetical, and whether Wells Fargo could recover $500.00 or $650.00 in attorney's fees and costs pursuant to the Agreed Order.  The Court does not believe it is necessary to resolve the meaning of this parenthetical phrase.

The Agreed Order pertained solely to the automatic stay in the First Bankruptcy, and therefore, the Court will construe the agreement contained therein to pertain solely to that topic.  [Docket No. 46, Case No. 07-30755].  As such, the Court believes that the proper question—as opposed to what "not to exceed $650.00" means—is what charges fall within the ambit of costs and fees associated with the automatic stay.  Such costs and fees would, pursuant the above-quoted language in the Agreed Order, necessarily be limited to $500.00 or $650.00, depending upon how the contract's language is construed.  Upon reviewing the invoices set forth by Wells

---

[19] The $500.00 in attorney's fees and costs were invoiced to and paid by Wells Fargo.  [Tr. March 5, 2008, 27:12–28:7]; [Wells Fargo Ex. 40].

Fargo, the Court finds that Wells Fargo seeks reimbursement for only $500.00 that is related to the automatic stay in the First Bankruptcy. As such, there is no need to resolve the meaning of "not to exceed $650.00" because, regardless of the construction of the contested language, Wells Fargo only seeks $500.00 in costs and fees associated with the automatic stay in the First Bankruptcy.

Under Texas law, parties may agree to what constitutes reasonable attorney's fees. *Caprock Inv. Corp. v. Montgomery First Corp.*, No. 11-04-00097-CV, 2005 WL 3074166, at *1 (Tex. App.—Eastland Nov. 17, 2005, pet. denied) (unreported opinion) ("[T]he parties stipulated to the amount of reasonable and necessary attorney's fees."); *Jorrie v. Lack's Stores, Inc.*, 1997 WL 271320, No. 04-95-00357-CV, at *7 (Tex. App.—San Antonio May 21, 1997, no pet.) (unreported opinion) (The parties agreed that "the prevailing party at trial on the declaratory judgment issue of possession would be entitled to $150,000 as reasonable and necessary attorney's fees."). As discussed above, the parties agreed that $500.00 (or $650.00) was a reasonable sum to cover attorney's fees and costs associated with the automatic stay in the First Bankruptcy. As such, the Court finds that the $500.00 in fees and costs listed in Invoice #12001432 are reasonable.

### 3. Invoice #20416

#### a. Foreclosure Sale Scheduled for February 6, 2007 ($675.00)

In the Amended Proof of Claim, Wells Fargo seeks reimbursement for a $675.00 charge incurred in connection with the Foreclosure Sale, which was scheduled to occur on February 6, 2007.[20] [Wells Fargo Ex. 1 (Invoice #20416)]. The evidence is uncontroverted that the

---

[20] The $675.00 flat fee for the Foreclosure Sale was invoiced to and paid by Wells Fargo. [Tr. March 5, 2008, 27:12–28:7]; [Wells Fargo Ex. 40].

Foreclosure Sale never occurred. [Tr. Mar. 5, 2008, 95:4–6]. Hight stayed the Foreclosure Sale by filing the First Bankruptcy on February 3, 2007—a few days before the scheduled sale.

In analyzing the reasonableness of this charge, the Court initially notes that Barrett Burke agreed to conduct the Foreclosure Sale for a flat fee of $675.00. [Tr. Mar. 5, 2008, 102:21–23]. Further, with respect to the Foreclosure Sale, Barrett Burke performed services necessary to prepare for the Foreclosure Sale, but did not conduct the actual sale. [Tr. Mar. 7, 2008, 40:13– 41:9]. Beyond this information, the Court has no further evidence pertinent to Wells Fargo's $675.00 claim. Under such conditions, the Court will not approve this charge.

For the purposes of this discussion, the Court assumes, *arguendo*, that $675.00 is a reasonable fee to conduct the Foreclosure Sale. Moreover, the Court will assume, *arguendo*, that Wells Fargo's claim for this charge was properly set forth in the Amended Proof of Claim. Under these assumptions, Wells Fargo's claim constitutes prima facie evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f). As such, the burden switches to Hight to properly object to the claim. *See S. Tex. Wildhorse Desert Invs., Inc. v. Tex. Commerce Bank-Rio Grande Valley*, 314 B.R. 107, 124 (S.D. Tex. 2004). Hight is able to satisfy her burden through "the production of specific and detailed allegations that place the claim into dispute"— namely, the fact that the Foreclosure Sale was never conducted. *See In re Kilgore Meadowbrook Country Club, Inc.*, 315 B.R. 412, 417–18 (Bankr. E.D. Tex. 2004). Thus, the burden switches a final time, and Wells Fargo must establish the validity of its claim by a preponderance of the evidence. Wells Fargo is unable to satisfy this burden.

To establish the validity of its $675.00 claim, Wells Fargo must demonstrate the reasonableness of the fee charged. As described above, the Court assumes that $675.00 is a reasonable fee to conduct the Foreclosure Sale. However, Hight stayed the commencement of

the Foreclosure Sale by filing the First Bankruptcy, and as a result, Barrett Burke never *completed* the task for which $675.00 is a reasonable fee. As such, the pertinent questions before the Court become: (1) If $675.00 is a reasonable fee for Barrett Burke to conduct the Foreclosure Sale, is $675.00 a reasonable fee for preparing for the Foreclosure Sale, but not actually conducting it? and (2) If $675.00 is unreasonable compensation for the services that Barrett Burke actually did, what is reasonable compensation? The Court need not deal with these questions separately because a single discussion will properly address both.

In order to satisfy its burden to prove the validity of its claim arising from preparation for the Foreclosure Sale, Wells Fargo must establish the validity of its claim by a preponderance of the evidence. Wells Fargo has failed to set forth any evidence regarding the value of the work Barrett Burke devoted to preparation for the Foreclosure Sale. Barrett Burke's invoice for this work [Wells Fargo Ex. 1 (Invoice #20416)] fails to set forth how many hours its employees expended in preparation for the Foreclosure Sale or what the billing rates of such employees were. Moreover, Wells Fargo has not presented evidence that would allow so much as an educated guess at the reasonable worth of the work that Barrett Burke did in preparation for the Foreclosure Sale. Thus, this Court is incapable of determining if $675.00 is a reasonable fee for preparing for the Foreclosure Sale, but not actually conducting it. Nor does the Court have any evidence as to what would constitute reasonable compensation if $675.00 is not a reasonable fee.

While the Court does not dispute that some work may have been done by Barrett Burke such that it could, in good faith, invoice Wells Fargo for $675.00, the Court must refuse to grant reimbursement for such a fee because Wells Fargo has presented no evidence pertaining to exactly what work was done, who did the work, what that person's hourly rate is, or how much time was spent doing the work. Absent such evidence, the Court is unable to determine the

reasonableness of the $675.00 fee.  Had Wells Fargo established the reasonable value of Barrett

Burke's services, the Court could allow reimbursement by the bankruptcy estate for that amount,

but in the absence of such evidence, Wells Fargo's claim must be deemed invalid.

### b.  Costs Associated with the Foreclosure Sale ($341.50)

In the Amended Proof of Claim, Wells Fargo seeks reimbursement for $341.50 in costs

associated with preparation for the Foreclosure Sale (the Foreclosure Costs).[21]  [Wells Fargo Ex.

1 (Invoice #20416)].   While the Foreclosure Sale never actually occurred, as previously

discussed, Barrett Burke conducted the services necessary to prepare for the Foreclosure Sale.

[Tr. Mar. 7, 2008, 40:13–41:9].  Moreover, Wells Fargo has set forth uncontroverted evidence

that it actually paid the Foreclosure Costs.  [Tr. Mar. 5, 2008, 27:5–28:9]; [Wells Fargo Ex. 40].

Hight's only objections to these costs are that these charges are illegal and that Wells

Fargo "has no basis for including these fees . . . ."  [Docket No. 29].  The Court finds these

objections unpersuasive.

Hight fails to specifically describe how Wells Fargo's inclusion of the Foreclosure Costs

in the Amended Proof of Claim is illegal.  Moreover, the Court does not, upon its own review,

note any colorable argument as to why these claims are illegal.  Such a broad objection is

insufficient to properly object to a claim, and as such, Hight has failed to properly object to the

Foreclosure Costs on this ground.  *See* William L. Norton, Jr. & William L. Norton, III, Norton

Bankruptcy Law and Practice § 48:25 (3d ed. 2008).

The Court is equally unpersuaded that Wells Fargo's inclusion of the Foreclosure Costs

in the Amended Proof of Claim is without basis.  The Deed of Trust provides that Wells Fargo

may, upon default by Hight, "invoke the power of sale and any other remedies permitted by

---

[21] The $341.50 in costs are composed of the following charges:  posting notice of sale ($25.00), filing notice of sale ($2.00), statutory service of notice ($5.58), pre-foreclosure title search ($178.61), recording of appointment ($16.00), title search update ($89.31), and document retrieval ($25.00).

applicable law" and "collect all expenses incurred in pursuing [these] remedies." [Wells Fargo Ex. 3 at § 21]. The Court finds Wells Fargo's actions in pursuing the Foreclosure Sale and incurring the Foreclosure Costs were appropriate based upon this provision. As such, Hight has failed to establish that Wells Fargo's inclusion of the Foreclosure Costs was without basis, and thus, this objection is not supportable. Therefore, the Court overrules Hight's objection to the Foreclosure Costs.

### C. Wells Fargo is the Rightful Creditor

In the Objection to Claim, Hight asserts that the Amended Proof of Claim is improper because Wells Fargo "failed to attach any supporting documentation indicating that they are the rightful creditor." [Docket No. 29, p. 2]. The Court disagrees.

Hight contracted with Norwest in the Deed of Trust and Fixed Rate Note. [Wells Fargo Ex. 2, 3]. In 2000, Norwest changed its name to Wells Fargo Home Mortgage, Inc. [Wells Fargo Ex. 1 (Certificate of Amendment, #A0542642)]. Then, in 2004, Wells Fargo Home Mortgage, Inc. merged with Wells Fargo. [Wells Fargo Ex. 1 (Agreement of Merger, #D0737510)]. Wells Fargo attached to the Amended Proof of Claim: (1) the certificate of amendment by which Norwest changed its name; and (2) the agreement of merger by which Wells Fargo Home Mortgage, Inc. merged with Wells Fargo. [Wells Fargo Ex. 1]. Such evidence is sufficient to show a chain of continuity from the original contracting party, Norwest, to Hight's current rightful creditor, Wells Fargo. Thus, Hight's argument that Wells Fargo failed to demonstrate that it is the present owner and holder of the Deed of Trust and Fixed Rate Note is unpersuasive.[22]

---

[22] The Court recognizes that the Objection to Claim was based upon the Original Proof of Claim, not the Amended Proof of Claim. The Original Proof of Claim had solely the Fixed Rate Note and the Deed of Trust attached as exhibits. As such, had Wells Fargo failed to file the Amended Proof of Claim, which included a certificate of

**D. Debtor's Objection to Application for Approval of Fees Under Fixed Fee Agreement in the Pending Case**

In the Fee Application, Wells Fargo seeks a total of $600.00 from Hight's present bankruptcy estate—$250.00 for "claim preservation" and $350.00 associated with the Motion to Extend Stay. [Docket No. 39]. Both claims represent flat rate fees invoiced to Wells Fargo for bankruptcy services provided by Barrett Burke in the pending case. In support of the Fee Application, Wells Fargo sets forth: (1) invoices from Barrett Burke to Wells Fargo totaling $600.00 (the Fee Invoices); (2) a Client Billing History Report stating that Wells Fargo had paid the Fee Invoices in full (the Billing Report); (3) Bankruptcy Case Comments for file #628123 and #628545 (the Case Comments); and (4) Attorney/User Summaries for file #628123 and #628545 (the Time Summaries). [Docket No. 39-3]. The $250.00 fee is associated with file #628123, and the $350.00 fee is associated with file #628545.

"This Court has previously held that a creditor holding a lien solely on the debtor's principal residence . . . may assess post-petition, pre-confirmation charges pursuant to § 506(b), but only by filing a Rule 2016 application." *In re Parsley*, 384 B.R. 138, 168–69 (Bankr. S.D. Tex. 2008) (citing *In re Sanchez*, 372 B.R. 289, 303–05 (Bankr. S.D. Tex. 2007))). Such charges "must be approved by the Court as reasonable under [11 U.S.C. § 506(b)] and Bankruptcy Rule 2016(a)." *In re Jones*, 366 B.R. 584, 594 (Bankr. E.D. La. 2007). Section 506(b) provides that the holder of a secured claim may collect "any reasonable fees, costs, or charges provided for under the agreement . . . under which such claim arose."[23] The applicant seeking fees, costs, or

---

amendment and an agreement of merger, the Court's conclusion on this issue might be different. *See* [Wells Fargo Ex. 1 (Agreement of Merger, #D0737510 & Certificate of Amendment, #A0542642)].

[23] Such fees are limited to the extent that the secured claimholder is over-secured. 11 U.S.C. § 506(b). In the case at bar, Wells Fargo sets forth a claim of $164,473.30, and the property securing this debt is valued at $230,500.00. [Wells Fargo Ex. 1 (Wells Fargo's proof of claim)]. Hence, there is no question that Wells Fargo is over-secured in this case. The Court would note that even if Wells Fargo was under-secured, because Wells Fargo's claim is secured solely by the Debtor's principal residence, § 1322(b)(2)(B) allows Wells Fargo to recover its post-petition fees and costs, but it may do so only if they are reasonable, and only by complying with Bankruptcy Rule 2016.

charges from the estate "has the burden to file Rule 2016 disclosures and show that its charges are reasonable as required by § 506(b)." *Sanchez,* 372 B.R. at 304–05. To this end, "any entity seeking to charge a Chapter 13 debtor's estate must provide documentation of these charges, so that the court, the debtor, and other parties-in-interest can review and analyze each application for compensation." *Id.* at 304. The Court finds that Wells Fargo may satisfy this burden by establishing either of two points: (1) the flat fees invoiced by Barrett Burke are reasonable regardless of the actual hours expended; or (2) based upon a consideration of Wells Fargo's evidence, the fees contained therein are reasonable. Wells Fargo is unable to satisfy its burden on either point, and therefore, is unable to establish that its post-petition, pre-confirmation attorney's fees in this case are reasonable.

### i. Flat fee arrangements are not per se reasonable.

Wells Fargo asserts that flat fee arrangements, such as the ones at bar, are appropriate in the current market. *See* [Tr. Mar. 11 2008, 42:12–43:1]. Specifically, during closing arguments, in regards to flat fee bankruptcy work, counsel for Wells Fargo stated: "[S]ometimes it takes more [attorney's work]; sometimes it takes less [attorney's work]. But on average . . . [the fees charged by loan servicers such as Wells Fargo seem] about right in the market place." *Id.* at 42:15–21. In presenting such arguments, Wells Fargo impliedly asserts that attorney's fees incurred pursuant to a flat fee agreement that is representative of the current market are, *per se,* reasonable. The Court disagrees.

"The Fifth Circuit has instructed bankruptcy judges to follow a three-step process in awarding fees to secured creditors [under § 506(b)]: (1) determine the nature and extent of the services supplied by the attorney with reference to the time and labor records submitted; (2) ascertain the value of the services; and (3) briefly explain the findings and the reasons upon

which the award is based." *In re Pan Am. Gen. Hosp., LLC*, 385 B.R. 855, 868 (Bankr. W.D. Tex. 2008) (citing *In re Hudson Shipbuilders, Inc.*, 794 F.2d 1051, 1058 (5th Cir. 1986)). As such, prior to making its findings on the reasonableness of fees sought under § 506(b), this Court must evaluate time records to establish the extent of services provided and then value those services. Such requirements are not reconcilable with the premise that flat rate, market-appropriate attorney's fees are *per se* reasonable.

Under a *per se* reasonableness rule, this Court would be obligated to approve fee applications as reasonable upon a determination that the flat fee arrangements contained therein were representative of the market. Accordingly, such fee applications would necessarily be deemed reasonable *without reference to the attorney's hours expended on the case or the reasonable value of such work.* To accept such a rule would necessarily require this Court to ignore binding Fifth Circuit precedent requiring that, when awarding attorney's fees pursuant to § 506(b), this Court must "determine the nature and extent of the services supplied by the attorney with reference to the time and labor records submitted" and "ascertain the value of the services." *Hudson Shipbuilders*, 794 F.2d at 1058. This Court cannot, and will not, accept a rule that would render such precedent devoid of meaning. Accepting a *per se* reasonableness rule would do just that because the process of evaluating the extent and worth of attorney's services rendered would be completely superfluous under such a rule. As such, fee applications submitted pursuant to a flat fee agreement, despite the fact that the flat fee may be appropriate under current market conditions, are not *per se* reasonable.[24]

In making this determination, the Court recognizes that a rule holding market appropriate flat fee attorney's fees to be *per se* reasonable maintains some appeal in that it allows debtors to

---

[24] The Court expresses no opinion regarding "capped fee" agreements in which an attorney agrees to do legal work for a flat rate, but further agrees to charge a lower rate if the reasonable value of his or her work is below the agreed upon flat rate.

allocate risk amongst themselves.   A flat fee regime would allow debtors to avoid large attorney's fees should their case prove particularly labor intensive.   Moreover, such an allocation of risk could be had at the sole cost of paying a flat rate regardless of how little effort was actually put into the case.   However, despite its facial appeal, proponents of such a rule neglect one issue—reasonableness of attorney's fees should be determined on a *case by case basis*.   *See In re Bond*, 249 B.R. 891, 895 (C.D. Ill. 2000) ("The reasonableness of an attorney's fees is a factual determination to be made on a case by case basis.") (overruled on other grounds); *In re Day*, 213 B.R. 145, 150 (C.D. Ill. 1997) ("A bankruptcy court's inquiry into the reasonableness of an attorney's fees is a factual question to be determined on a case-by-case basis."); *Mason & Dixon Lines, Inc. v. First Nat. Bank of Boston*, 86 B.R. 476, 484 (M.D.N.C. 1988) ("The reasonableness of attorney's fees should be determined by the bankruptcy court on a case-by-case basis.").   This Court fails to see how, after conducting a case specific investigation, it could presently find attorney's fees in excess of the value of the services provided to be reasonable.   As such, a *per se* reasonable rule must be rejected.

### ii. The Fee Application fails to establish the reasonableness of Wells Fargo's post-petition, pre-confirmation attorney's fees.

To satisfy its burden under Rule 2016, an applicant must "set[] forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested."   Fed. R. Bankr. P. 2016(a).   To satisfy this standard, an application must "be sufficiently detailed and accurate that, in conjunction with any proceeding in connection therewith and the record in the case, a court can make an independent evaluation as to what level of fees are actual, necessary and reasonable."   *In re Evangeline Ref. Co.*, 890 F.2d 1312, 1326 (5th Cir. 1989).   To this end, any billing records provided with an application should "clearly identify each discrete task billed, indicate the date the task was performed, the precise amount of

time spent . . . , who performed the task, their level of experience and that person's hourly rate."
*In re Baker*, 374 B.R. 489, 494 (Bankr. E.D.N.Y. 2007) (citing *In re Fibermark, Inc.,* 349 B.R.
385, 395 (Bankr. D. Vt. 2006)).  In the case at bar, Wells Fargo has not provided sufficient
evidence to allow this Court to make an independent evaluation of the propriety of the requested
fees.  Accordingly, the Court must sustain the Fee Objection.

As discussed above, Wells Fargo presented four types of documents in support of its Fee
Application:  (1) Fee Invoices; (2) a Billing Report; (3) Case Comments; and (4) the Time
Summaries.  The Fee Invoices set forth the amount of the fee and give a brief description of the
services rendered (File #628123 - $250.00 for "Plan review, analysis and Prep and filing of Proof
of Claim" and File #628545 - $350.00 for "Response to Motion to Extend Stay").  The Billing
Report simply sets forth that Wells Fargo paid the $350.00 and $250.00 fees invoiced by Barrett
Burke.  The Case Comments provide a limited description of hours billed, including the number
of hours billed, a brief description of the billed activity, and an identification of the billing
person.  The Court notes that the Case Comments do not provide the date of the billed activity.[25]
The Time Summaries set forth the name of the attorney or paralegal that is billing hours, the
number of total hours billed by that party, and that party's billing rate.  These disclosures, in
addition to any evidence adduced at trial, are insufficient to satisfy Wells Fargo's burden to
provide sufficient information to allow this Court to engage in an independent evaluation of what
fees are reasonable.

Specifically, a fee application must set forth the date that billable services are rendered.
*See Baker*, 374 B.R. at 494; *In re Ponce Marine Farm, Inc.*, 259 B.R. 484, 496 (D.P.R. 2001)
("'[T]he level of detail expected in applications for attorney's fees in the district [is that]: '[A]ll

---

[25] The Court notes that the Case Comments do indicate at what time the billing entry was actually made, but this is
not reflective of the date or time that the billed activities actually occurred. [Tr. March 7, 2008, 139:6–21].

applications for attorney's fees filed hereinafter before this court shall identify each task billed to the estate, *indicate the date or dates when the services were performed*, the amount of time spent, the person performing the service and his hourly rate, and a brief description of what was done.'" (quoting *In re Fruits Int'l, Inc.,* 87 B.R. 769, 772 (Bankr. D.P.R. 1988) (emphasis added)); *Fibermark,* 349 B.R. at 395. Without such information (either disclosed at trial or in the Fee Application), this Court is unable to "make an independent evaluation as to what level of fees are actual, necessary and reasonable." *See Evangeline Ref.*, 890 F.2d at 1326. Thus, as Wells Fargo has not sufficiently complied with the procedural requirements of Rule 2016, the Court must deny the Fee Application. *See In re Wilborn*, No. 03-48263, Adv. No. 07-3481, 2008 WL 2078089, at *2 n.5 (Bankr. S.D. Tex. May 15, 2008) ("[F]ailure to comply with the procedural provisions of Rule 2016 disables the court's ability to determine under state law whether the charges are allowable. Thus, the only possible conclusion is for the court to disallow fees which were not approved.").

**IV.    Conclusion**

"The three most important words in bankruptcy are: disclose, disclose, disclose." *In re Bossart*, No. 05-34015, Adv. No. 06-3540, 2007 WL 4561300, at *10 (Bankr. S.D. Tex. Dec. 21, 2007) (citing *In re Sanchez*, 372 B.R. 289, 305 (Bankr. S.D. Tex. 2007)). Such a statement bears significant importance where a creditor seeks to assert a claim in a bankruptcy case. However, this statement is of even greater import where a party seeks to collect fees from a bankruptcy estate because "every dollar expended on fees results in a dollar less for distribution to creditors of the estate." *Sanchez*, 372 B.R. at 304 (quoting *In re Universal Factoring Co.*, 329 B.R. 62, 65 (Bankr. N.D. Okla. 2005)).

In the case at bar, Wells Fargo's failure to disclose necessary information to the Court, at least in part, precludes the grant in full of its requested claim. As such, the Court will overrule the Objection to Claim with respect to Wells Fargo's claim for principal ($149,210.63) and arrearages (12 payments of $1,546.38 = $18,556.56), uncollected late charges ($262.50), property preservation/inspection fees ($61.25), and a portion of the pre-petition attorney's fees and costs ($991.50), but must sustain it with regards to Wells Fargo's claims for the escrow shortage ($779.00) and a portion of the pre-petition attorney's fees ($675.00). Moreover, due to a failure to make sufficient disclosures in the Fee Application, the Court, the Debtor, and other creditors do not have the evidence necessary to review and analyze Wells Fargo's request for post-petition fees of $600.00. *See Sanchez*, 372 B.R. at 304. Accordingly, the Court concludes that Wells Fargo may not collect its requested post-petition attorney's fees in this case.

Signed on this 13th day of August, 2008.

Jeff Bohm
United States Bankruptcy Judge